A04A0765. KYLES v. EASTERN CAR LINERS, INC. et al.

(598 SE2d 353)

ELDRIDGE, Judge.

This is an appeal from the grant of summary judgment in a Longshore and Harbor Workers' Compensation Act ("LHWCA") 33 USC § 905 (b) action by longshoreman, Ronald Kyles, against the ship owner, Albar Shipping & Trading Corporation, and the vessel's charterer, Eastern Car Liner, Ltd., in negligence for his injury. Finding a jury issue, we reverse.

On January 23, 2002, an untrained and inexperienced Kyles was called to work loading the multi-purpose cargo vessel M/V Reina Rosa on the Savannah River. The ship's cargo was a shipment to Japan of bags of kaolin, and the ship's hold was being loaded with one-ton bags. These kaolin bags were three feet tall, three feet wide, and three feet deep. The ship's crane lowered 24 bags at a time into the hold; after the release, a forklift picked up each bag and repositioned it. In the hold, these bags were stacked four bags high, which was a twelve-foot tall stack, by forklift and were stacked across the deck of the hold. Kyles' job was placing cardboard on the deck for the bags to be stacked on top of and along the side of the bags.

The ship would rock and roll from the passing of another ship in the river. Also, the ship would rock from the use of both cranes at the same time. The ship would rock from the movement of three bags by forklift. The movement of the load could cause the ship to list, but the ship could be leveled by adding ballast to the ballast tanks by the ship's crew.

Captain Fox, Vice President of Peeples Industries, the owner of Conbulk Stevedoring, Kyles' employer, gave his expert opinion that the bags fell on Kyles, because the ship rolled, causing the bags to topple down from the stacks. He further opined that this type vessel was unstable both when loading was begun and when the bags were picked up and moved into the hold, because such vessel was not built for transporting kaolin. Further, the captain of such ship would have known that the ship would roll with loading, which could cause bags to fall. William Kirkland, a witness to the falling bags, testified that the rocking of the ship caused the bags to fall. Mr. Glaize, the stevedore foreman for Conbulk Stevedoring testified that the ship rocked just prior to the fall.

On January 24, 2002, immediately prior to Kyles' injury, 24 bags had been lowered into the hold and released. Three or more of these bags of kaolin fell on Kyles, burying him. A forklift was required to remove the bags from on top of Kyles.

At the time of Kyles' injury, Captain Armando Tejida, and Chief Officer Wilfredo Ocampo, as well as another ship's officer, were on

board, and the captain and the first mate were observing the loading to make sure that it was safe and secure. These ship's officers and the stevedore foreman met to agree how the ship was to be loaded.

1. Kyles contends that the trial court erred in finding as a matter of law that the defendants had no duty to Kyles under *Scindia Steam Navigation Co. v. De Los Santos*, 451 U. S. 156 (101 SC 1614, 68 LE2d 1) (1981). We agree.

Under the turnover duty of the ship to the stevedore, there exist two related duties. First, the ship must exercise

> ordinary care under the circumstances to have the ship and its equipment in such condition that an expert and experienced stevedore will be able by the exercise of reasonable care to carry on its cargo operations with reasonable safety to persons and property.

*Scindia Steam Navigation Co. v. De Los Santos*, supra at 167. Second, the ship must warn

> the stevedore of any hazards on the ship or with respect to its equipment that are known to the vessel or should be known to it in the exercise of reasonable care, that would likely be encountered by the stevedore in the course of his cargo operations and that are not known by the stevedore and would not be obvious to or anticipated by him if reasonably competent in the performance of his work.

Id. Any defect in the ship at the time of turnover to the stevedore was deemed known by the ship's owner and officers. Id. at 176.

While all ships will roll, Captain Fox gave his opinion that the Reina Rosa had a tendency to roll more easily than other ships when being loaded or when loaded with kaolin, because the ship was not proper for kaolin transport, causing it to roll easier. The captain of the Reina Rosa did not understand or appreciate the ship's tendency to roll while being loaded with kaolin. This caused an issue as to the ship's ballast to compensate for this tendency to roll. Plaintiff's expert, Captain Mitchell Stoller, testified that in his opinion the turnover duty had been breached under the facts of this case. The rolling of a large ship such as this would not be obvious to an inexperienced Kyles, who had not been regularly employed in the maritime industry. Further, only the ship's crew can correct the ship's list and roll through changes in ballast. In his expert opinion, the records indicated that the owners and crew were aware of the rocking by the Reina Rosa prior to its arrival in Savannah. Under the facts and circumstances of this case, *Ollestad v. Greenville Steamship*

*Corp.*, 738 F2d 1049 (9th Cir. 1984), appears applicable in that it deals with an inherent characteristic of the ship which can make the ship dangerous after turnover to the stevedore and which imposes on the crew a "duty to exercise the reasonable care" required of stevedores to protect workers.

2. Kyles contends that the trial court further erred when it ruled that, as a matter of law, the "continuing duty" imposed by *Scindia* had not been breached. We agree.

Captain Tejida of the Reina Rosa denied any change in the ballast prior to the injury. However, the ship's log contradicted this statement and indicated that, on January 22, Salt Ballast Tank No. 1A had 92 tons of ballast added on the port side and 81 tons added on the starboard side. On January 23, an additional 11 tons of ballast were added to the starboard tank, bringing it up to 92 tons. In analyzing the rolling of the Reina Rosa while loading, it is critical to understand why the ballast was changed and what the crew knew about the ballast and when it was known. Captain Tejida and Chief Officer Ocampo both testified that they knew that the ship had a tendency to roll. The ballast and roll issues create material factual questions as to the safety of the ship at turnover, going to the issue of negligence, which are for jury determination and not for the trial court's determination.

3. Kyles contends that the trial court erred in finding that there was no question of material fact remaining as to whether the duty of "active control" had been breached. We agree.

Under the rider to the Reina Rosa charter agreement, the "stevedores work under the direct supervision of the master." Both Captain Tejida and Chief Officer Ocampo were present during the kaolin loading. Captain Tejida was responsible for "everything on board the ship," which included the cargo operations. For ship safety concerns, Chief Officer Ocampo constantly monitored the cargo operations. Thus, a question of fact as to the officers' and crew's active involvement in the cargo operations arises for jury determination. It is for a jury to decide how active one must be for purposes of active involvement in the loading operation to give rise to the duty of care. *Moore v. M. P. Howlett, Inc.*, 704 F2d 39 (2nd Cir. 1983); see also *Lieggi v. Maritime Co. of the Philippines*, 667 F2d 324 (2nd Cir. 1981).

In order for the duty of care to arise from active control, the plaintiff "must establish that the area in which the injury occurred, or the instrumentality which caused the injury, was under the substantial control of the vessel." *Serbin v. Bora Corp.*, 96 F3d 66, 71 (3rd Cir. 1996). In this case, the ballasting of the ship to dampen its listing and roll in cargo loading was in the exclusive control of the ship. Thus, where the active operations duty is an issue, the question

of whether the owner's actions were negligent was for the jury. See *Lieggi v. Maritime Co. of the Philippines*, supra at 328.

4. Kyles contends that there remains a material issue of fact whether the duty to intervene was breached. We agree.

When working conditions exist on the ship that are dangerous and are the stevedore's responsibility, the owner or its agents cannot ignore the unreasonable risk of injury to the longshoremen and shall intervene to protect them. *Tragni v. Establissement Maritime Camille*, 705 F2d 92 (2nd Cir. 1983). Thus, to fail to act may constitute "countenancing a hazard known to, and avoidable by, the shipowner." Id. at 94. A ship owner is not relieved of its duty to the longshoremen merely because the stevedore negligently continues to work using obviously dangerous equipment; therefore, the owner has the "exclusive responsibility of the shipowner's employees to maintain the deck of the [ship]." *Moore v. M. P. Howlett*, supra at 41. Thus, the rolling of the ship and the out of ballast gave rise to a jury question of the owner's duty to intervene.

5. Kyles contended that in granting summary judgment the trial court ignored material issues of fact that the owner violated the International Safety Management Code ("ISMC"). We agree.

The ISMC is to "protect life and property at sea, and to protect the environment." 62 Fed. Reg. 67492, Dec. 24, 1997. The United States of America adopted such standards and gave enforcement to the U. S. Coast Guard. 46 USC § 3201, Management of Vessels, Coast Guard Regulatory Reform Act, Oct. 19, 1996, Pub. L. No. 104-324, Title VI, § 602 (a), 110 Stat. 3928. The ISMC includes plans to regularly train ship and shoreside personnel, ensure safe practices, ensure visitor and contractor safety, and correct ISMC nonconformities. See, e.g., 33 CFR 96.230. On December 24, 1997, the U. S. Coast Guard implemented the requirements of the ISMC as part of its regulations. See 33 CFR 96.230 (b). Thus, the ISMC has changed the custom and practice of the maritime industry, which becomes another criterion relevant to the duty of reasonable care upon the ship. To determine if there has been a breach of the duty of care, it is necessary to look to "whether the pertinent statutes, regulations, or custom place or assume a continuing duty on the vessel to repair defective ship's gear being used by the stevedore in the cargo operation." *Scindia Steam Navigation Co. v. De Los Santos*, supra at 176.

Custom and practice of the maritime industry is that the crew of Reina Rosa were responsible for everything onboard the ship. This is further evidenced by the Time Charter, Rider Clause, and by the ISMC. Under 33 CFR 96.230, a safety management system for each vessel must: (1) provide for safe practices in vessel operation and a safe work environment onboard the type of vessel the system is developed for; (2) establish and implement safeguards against all

identified risks; (3) establish and implement actions to continuously improve safety management skills of personnel; and (4) ensure compliance with mandatory rules and regulations, taking into account relevant national and international regulations, standards, codes, and maritime industry guidelines, when developing procedures and policies for the safety management system.

The crew's and officers' awareness of the rolling of the ship and the effect on the ship under loading conditions, which could be alleviated by a change in ballast give rise to a factual issue as to whether the ISMC had been breached. Loading cargo increased the risk of rolling. Supervision of longshoremen in the hold loading cargo constituted an identified risk. The most obvious identified risks were rolling ship, shifting cargo, and falling cargo during cargo operations. The ISMC changed the custom and practice in the maritime industry and increased the burden on ship owners to ensure the safety of laborers on ship decks and in the ship's holds. The fact that the officers and crew took no steps to stop the dangerous rolling could be found to indicate a violation of the ISMC. Thus, a jury issue exists as to whether the ISMC was violated and whether that proximately caused Kyles' injuries.

*Judgment reversed. Ruffin, P. J., and Adams, J., concur.*

DECIDED MARCH 23, 2004 —
RECONSIDERATION DENIED APRIL 6, 2004 — 

*Robert S. Kraeuter, Jonah A. Flynn,* for appellant.
*Hunter, Maclean, Exley & Dunn, Robert S. Glenn, Jr., Colin A. McRae,* for appellees.